O

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| JENAE SHANKS, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. L-07-55 |
| | § | |
| SWIFT TRANSPORTATION CO. INC, | § | |
| | § | |
| Defendant. | § | |

## OPINION AND ORDER

Now pending is Defendant's Motion to Compel Arbitration and Dismissal or Abatement of Suit Pending Arbitration. [Dkt. No. 35].[1]  Also pending are Defendant's Motions to file a sur-sur-reply and to strike portions of Plaintiffs' sur-reply. [Dkt. Nos. 52-53].  Finally, the parties have filed various motions pertaining to discovery, the state of the pleadings, expert testimony, and summary judgment. [Dkt. Nos. 64, 69, 71, 74-76].  Upon review of the parties' briefs, the facts of the case, and the governing law, the Court **GRANTS** the motion to compel arbitration and orders that this case be **DISMISSED with prejudice**.  All other pending motions are **DENIED as moot**.

## I.      FACTS AND PROCEDURE

This lawsuit arises out of a motor vehicle accident that resulted in the death of Joseph Shanks, III ("Mr. Shanks"), a truck driver-trainee who was employed by Defendant Swift Transportation Company ("Swift").  Mr. Shanks died on December 7, 2006 as a result of injuries sustained when he was ejected from the cab of a Swift truck driven by Stephen Borne, a Swift employee.  As a part of his employment with Swift, Mr.

---

[1] This matter was initially referred to Magistrate Judge Saldaña for Findings of Fact and Recommendations of Law.  [Dkt. No. 36].  By agreement of the Judges, such matter is no longer referred.

Shanks had signed an employee welfare benefit plan provided by Swift under ERISA ("the Plan").   Article II of the Plan is entitled "Eligibility, Nature of Payments and Arbitration of Injury-Related Disputes."   Section 2.3, "Arbitration of Certain Injury-Related Disputes," states:

> [T]he following claims or disputes must be submitted to binding arbitration under this Section 2.3:
>
> (B) any legal or equitable claim or dispute by or with respect to a Participant for any form of physical or psychological damage, harm or death which relates to an accident . . . (including, but not limited to, claims of negligence or gross negligence . . . negligent hiring/training/ supervision/retention, emotional distress . . . or violation of any other noncriminal federal, state, or other governmental common law, statute, regulation or ordinance in connection with a job-related injury . . . ).   This includes all claims listed above that a Participant has now or in the future . . . .   This does not, however, include any legal or equitable claim under ERISA for benefits, fiduciary breach, or other problem or relief solely relating to benefits payable under this Plan.   The determination of whether a claim is covered by this Section shall also be subject to arbitration under this Section. . . . .   These provisions also apply to any claims that may be brought by a Participant's spouse, children, beneficiaries, representatives, executors, administrators, guardians, heirs or assigns.   This binding arbitration will be the sole and exclusive remedy for resolving any such claim or dispute.

Article III of the Plan is titled "Benefits."   Section 3.2, "Death Benefits," states:

> In the event that a Participant dies as the direct, sole, and independent result of, and within 365 days of, an Injury, then the Plan shall pay such Participant's beneficiary a Death Benefit equal to $150,000 . . . .   The Death Benefit shall be paid to the Participant's Beneficiary as follows: (i) 20% of the benefit shall be pain in a lump sum cash payment as soon as administratively possible following the death of the Participant and the determination of the proper Beneficiary; and (ii) the remainder of the benefit shall be pain in 35 equal monthly installments (without interest) . . . .

The Plaintiff is Janae Shanks, Mr. Shanks's ex-wife, who sues as the next friend of Keegan Takoda Shanks and Ty Alexander Shanks, Mr. Shanks's minor children ("Plaintiffs").   Intervenors are Joseph Shanks, Jr., Mr. Shanks's father, and Martha June

Lee ("Lee"), Mr. Shanks's mother, who is also the administratrix of Mr. Shanks's estate. Plaintiffs filed suit on April 10, 2007 in Texas state court, alleging negligence, negligence per se, *respondeat superior*, and negligent maintenance.  Swift removed the case on May 11, 2007.  Intervenors first moved to join the action on July 23, 2007.  Plaintiffs did not object, and Intervenors' motion was granted on August 9, 2007.

Plaintiffs brought an action for wrongful death under the Texas Civil Practice and Remedies Code ("the Code").  [Dkt. No. 1, Ex. B ¶ 2].[2]  Plaintiffs seek exemplary damages pursuant to chapter 41 of the Code, and Article XVI, Section 26 of the Texas Constitution, to compensate them for "loss of pecuniary support, consortium, services, society, advice, comfort, counsel, familial relationship, love, affection, solace and services," as well as their own "extreme mental anguish."  [Dkt. No. 1, Ex. B ¶ 17]. Plaintiffs also seek compensation for the children's future medical treatment, counseling, and loss of inheritance.  [*Id.*].  Like Plaintiffs, Intervenors seek to recover for the wrongful death of their son, which they allege was caused by Swift's negligence.  [Dkt. No. 10 ¶¶ 1-2].  However, Lee, suing in the capacity of administratrix of Mr. Shanks's estate, also sues under the survival statute, § 71.021 of the Code, and seeks to recover for Mr. Shanks's physical injuries, pain and suffering, mental anguish, lost earning capacity, medical expenses, funeral expenses, and loss of enjoyment of life.  [*Id.* ¶¶ 25-26].

On December 7, 2007, Defendant moved to compel arbitration.  [Dkt. No. 35]. Plaintiffs and Intervenors opposed such motion.  [Dkt. No. 37].  Defendant filed a reply brief, [Dkt. No. 39], to which the Magistrate Judge ordered a sur-reply.  [Dkt. No. 47]. Plaintiffs and Intervenors filed such sur-reply on April 14, 2008.  [Dkt. No. 49].

---

[2] Plaintiffs originally pleaded that such cause of action arose under § 72.021 of the Code.  However, it is apparent that Plaintiffs seek wrongful death benefits, which arise under § 71.004.  *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 71.004 (wrongful death statute), 71.021 (survival statute) (Vernon 2007 supp.).

Defendant then moved for leave to respond to the sur-reply, and also moved to strike portions of the sur-reply.  [Dkt. Nos. 52-53].

## II.    DISCUSSION

After discussing the applicable law, the Court concludes that the law of Texas, not federal law, governs this dispute.  The Court holds that under Texas law, all claims asserted in this dispute must be submitted to arbitration and the case dismissed.

### A.    Jurisdiction and Choice of Law

Jurisdiction in this case is founded on diversity of citizenship.  *See* 28 U.S.C. § 1332.  All parties aligned as plaintiffs—the children, Jenae Shanks, Intervenors, and Mr. Shanks—are citizens of Texas.  Swift is incorporated in Nevada and has its principle place of business in Arizona.  Therefore, the requisite complete diversity exists.  *See, e.g.*, *Getty Oil Corp. v. Ins. Co. of N. Am.*, 841 F.2d 1254, 1258 (5th Cir. 1988).  Under the *Erie* doctrine, to the extent that the United States Constitution or an Act of Congress provides substantive law governing the pending matters, such law is controlling.  *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).  However, in the absence of federal positive law or a federal procedural rule governing the outcome of a dispute, a district court must apply the substantive law of the forum state, and federal procedural law.  *Id.* at 78; *see also Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996).

Generally, the arbitrability of a dispute is a matter of federal substantive law, which displaces conflicting state law.  *Preston v. Ferrer*, __ U.S. __, 128 S. Ct. 978, 981, 983 (2008); *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006).  Notwithstanding this general rule, the Court holds in the next section that federal law

does not control the current dispute, and therefore the Court will apply Texas law to determine the question of arbitrability.

### B.        The Federal Arbitration Act Does Not Apply

The Federal Arbitration Act (FAA), 9 U.S.C. §§ 1 *et seq.*, "compels judicial enforcement of a wide range of written arbitration agreements." *Terrebonne v. K-Sea Transp. Corp.*, 477 F.3d 271, 278 (5th Cir. 2007) (quoting *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111 (2001)).  However, Plaintiffs and Intervenors point to Section One of the FAA, which provides that "nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce."  9 U.S.C. § 1.  The Supreme Court, applying the canon of *ejusdem generis*, has held that Section 1 exempts only contracts of employment of transportation workers from the FAA.  *See Adams*, 532 U.S. at 114-15, 119.

In a case cited with approval by the Supreme Court, *see id.* at 111, the Fifth Circuit held that Section 1 "should be narrowly construed to apply to the employment contracts of seamen, railroad workers, and any other class of workers actually engaged in the movement of goods in interstate commerce in the same way that seamen and railroad workers are." *Rojas v. TK Commc'ns, Inc.*, 87 F.3d 745, 748 (5th Cir. 1996) (quotation omitted); *see also Tran v. Tex. Lincoln Mercury, Inc.*, No. H-07-cv-1815, 2007 WL 2471616, at *5 (S.D. Tex. Aug. 29, 2007) ("Under Fifth Circuit precedent, a transportation worker is someone who works in the transportation industry—an industry whose mission it is to move goods.").  The Fifth Circuit has not addressed the issue, but other circuit courts have held that truck drivers fall under this FAA exception.  *See, e.g.*, *Harden v. Roadway Package Sys., Inc.*, 249 F.3d 1137, 1140 (9th Cir. 2001).

Swift does not question that its drivers, such as Mr. Shanks, are "transportation workers" within the meaning of Section 1 and Supreme Court precedent.  Instead, it argues that the "Swift Transportation Co. Inc., Injury Plan for Texas Employees" should not be considered a "contract of employment," but rather "a separate agreement providing for certain benefits incident to employment."  [Dkt. No. 39 ¶ 1].  The Court disagrees.  As Plaintiffs note, the arbitration agreement is a part of a "mandatory company policy" which Mr. Shanks signed as a condition of being hired by Swift.  [Dkt. No. 49 ¶ 3; Dkt. No. 35, Ex A, at 23].  Moreover, the Plan only applies to employees working in Texas and receiving a salary from Swift.  [Dkt. No. 35, Ex. A, at 10, 11, 23]. Given that the agreement was between Mr. Shanks and his employer, provided benefits tied to continued employment, and was "mandatory" to boot, the Court easily concludes that the Plan comprises a component of Shanks's contract of employment.  *See Brown v. Nabors Offshore Corp.*, 339 F.3d 391, 394 (5th Cir. 2003); *Buckley v. Nabors Drilling USA, Inc.*, 190 F. Supp. 2d 958, 960 (S.D. Tex. 2002), *aff'd*, 51 F. App'x 928, 2002 WL 31415106 (5th Cir. Oct. 8, 2002) (unpublished); *Carr v. Transam Trucking, Inc.*, No. 3:07-cv-1944-BD, 2008 WL 1776435, at *2 (N.D. Tex. Apr. 14, 2008); *cf. Garza Nunez v. Weeks Marine, Inc.*, Civ. No. 06-3777, 2007 WL 496855, at *3 (E.D. La. Feb. 13, 2007); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 n.2 (1991).

While the FAA does not require arbitration, the question remains whether the exemption of Section 1 operates as a form of reverse preemption, so as to prohibit arbitration of the dispute altogether.  Plainly, it does not.  The weight of authority shows that even if the FAA is inapplicable, state arbitration law governs.  *See Garza Nunez*, 2007 WL 496855, at *7; *Valdes v. Swift Transp. Co.*, 292 F. Supp. 2d 524, 527-29

(S.D.N.Y. 2003) (citing cases).  Thus, where Section 1 of the FAA exempts a particular contract from the FAA, the effect is "merely to leave the arbitrability of disputes in the excluded categories as if the [FAA] had never been enacted."  *Valdes*, 292 F. Supp. 2d at 529 (quoting *Mason-Dixon Lines, Inc. v. Local Union No. 560*, 443 F.2d 807, 809 (3d Cir. 1971)).   Thus, the Court must next consider Swift's argument that the Plan's arbitration clauses are enforceable under state law.

The Court holds that the Plan is a "contract of employment" which covers Mr. Shanks, a "transportation worker," and is therefore exempted from the FAA under 9 U.S.C. § 1.  Nevertheless, in the following section, the Court holds that under Texas law, the claims asserted in this case must be submitted to binding arbitration.

### C.      Texas Law Requires that all Claims be Arbitrated

Given that the Court has jurisdiction of the dispute pursuant to 28 U.S.C. § 1332, and the FAA does not control this case, the Court must apply Texas law governing arbitration agreements.  *See Erie R.R.*, 304 U.S. at 78.[3]  Under both Texas law and the FAA, a party seeking to enforce an arbitration agreement must show: (1) the existence of a valid arbitration agreement, and (2) that the claims raised fall within the scope of such agreement.  *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737-38 (Tex. 2005).  There is no presumption that an arbitration agreement is valid, but if the movant proves that it is valid, "[d]oubts regarding an agreement's *scope* are resolved in favor of arbitration . . . ."  *Kellogg*, 166 S.W.3d at 737 (emphasis in original); *see also Bridas*

---

[3] No party has addressed the issue of choice of law.  However, the Court easily finds that Texas choice-of-law rules mandate applying Texas law to this dispute, regardless of whether the Court characterizes it as a contract or a tort action.  Contractually, Mr. Shanks and Swift have agreed that the Plan shall be governed by Texas law in the absence of superseding federal law—which is presently the case.  [Dkt. No. 37, Ex. A at 53]; *see Cates v. Creamer*, 431 F.3d 456, 462 (5th Cir. 2005) (noting that Texas has adopted Restatement (2d) of Conflicts of Laws); Restatement (2d) of Conflicts of Laws § 187(1) (allowing parties to contractually choose which state's law shall govern).  Alternatively, if the action sounds in tort, Texas clearly meets the "most significant relationship" test.  *See* Restatement (2d) of Conflicts of Laws § 145.

*S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 354 n.4 (5th Cir. 2003) ("[T]he purpose of the FAA was to make arbitration agreements as enforceable as other contracts, not more so.") (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 945 (1995)).

Normally, parties are only bound by arbitration agreements to which they are signatories. *See Kellogg*, 166 S.W.3d at 738; *cf. Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 478-79 (1989) ("Arbitration . . . is a matter of consent, not coercion . . . ."). However, federal and state courts recognize that this rule is not ironclad. *See Kellogg*, 166 S.W.3d at 738-39. While it is not always apparent whether such exceptions arise under state or federal law, the Texas Supreme Court has endeavored to achieve consistency with federal law. *See id.* at 738. Consequently, the Texas Supreme Court noted in *Kellogg* that six general theories "may bind non-signatories to arbitration agreements: (1) incorporation by reference; (2) assumption; (3) agency; (4) alter ego; (5) equitable estoppel; and (6) third-party beneficiary. *Id.* at 739 (citing *Bridas*, 345 F.3d at 356). Swift asserts (1) that Plaintiffs are estopped to avoid the arbitration clause; (2) that they are third-party beneficiaries of the Plan; or (3) that Mr. Shanks had authority under Texas family law to obligate his minor children to arbitrate their claims.

### 1.    *Contractual Principles & Estoppel*

The Court first considers whether Plaintiffs or Intervenors are contractually bound to arbitrate any or all of their claims. *See Kellogg*, 166 S.W.3d at 738. The Court concludes that the survival claim and the claim for death benefits brought pursuant to the Plan must be arbitrated under the doctrine of direct benefits estoppel.

### a.    Standard

Plaintiffs never signed the Plan, yet "a litigant who sues based on a contract subjects him or herself to the contract's terms."  *In re Home Corp.*, 236 S.W.3d 761, 765 (Tex. 2007) (quotation omitted).  In other words, under the genus of equitable estoppel, the Texas Supreme Court recognizes a species known as "direct benefits estoppel," pursuant to which "a non-signatory plaintiff seeking the benefits of a contract is estopped from simultaneously attempting to avoid the contract's burdens, such as the obligation to arbitrate disputes."  *Kellogg*, 166 S.W.3d at 739; *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 131-32 (Tex. 2005); *In re Vesta Ins. Group, Inc.*, 192 S.W.3d 759, 761 (Tex. 2006). The Supreme Court in *Weekley* instructs that "whether a claim seeks a direct benefit from a contract containing an arbitration clause turns on the substance of the claim, not artful pleading."  180 S.W.3d at 131-32 (citations omitted).  If liability either "arises from the contract or must be determined by reference to it," the claim must be arbitrated.  *Id.* at 132.  On the other hand, the claim is exempt from arbitration "if liability arises from general obligations imposed by law."  *Id.*  It is critical that a contract confer and govern the rights at issue, as equity alone cannot oblige a litigant to arbitrate his dispute.  *Id.* at 134.  Moreover, "a meddlesome stranger cannot compel arbitration by merely pleading a claim that quotes someone else's contract."  *Id.*

The *Weekley* Court acknowledged that the contours of direct benefits estoppel are "not entirely clear."  180 S.W.3d at 134.  The case's facts help to illustrate how it applies in practice.  In *Weekley*, Forsting contracted with Weekley for the construction of a home which he intended to share with his daughter, Von Bargen, and her family.  *Id.* at 129. Forsting alone executed a Purchase Agreement with an arbitration clause, and then

transferred the home to a family trust.  Von Bargen was heavily involved in decision-making during the construction of the home, and later demanded that Weekley make repairs when problems arose.  *Id.*  Unsatisfied with the repairs, Forsting, Von Bargen, and the family trust filed suit against Weekley.  "Forsting and the trust asserted claims for negligence, breach of contract, statutory actions, and breach of warranty.  Von Bargen sued only for personal injuries," i.e. asthma she developed due to allegedly negligent repairs of the home.  *Id.*  Focusing on Von Bargen's conduct during the performance of the contract, the Court found that Von Bargen had sought substantial benefits under the Purchase Agreement by previously demanding repairs and reimbursement from Weekley.  Moreover, while Von Bargen did not sue in her capacity as trustee or beneficiary, any recovery under the Purchase Agreement would "inure to her direct benefit . . . ."  *Id.* at 133-34.  The Court focused on Von Bargen's conduct "during the performance of the contract" as probative of an attempt to seek "substantial and direct" benefits under the contract.  *Id.* at 133, 134.

    A recent opinion by a Texas Court of Appeals illustrates the operation of the doctrine of contract-based direct benefits estoppel upon wrongful death and survival claims.  *In re Jindal Saw Ltd.*, No. 01-07-1068-CV, __ S.W.3d __, 2008 WL 2186086 (Tex. App.—Houston [1st Dist], May 22, 2008, orig. proceeding [mtn. for reh'g filed]).  The facts are as follows: Carlos Lara and Saw Pipes USA entered into an employee benefits agreement which included an arbitration clause.  *Id.* at *1.  The plan also contained a clause that purported to bind Carlos's "heirs, beneficiaries, and assigns" to arbitrate disputes.  *Id.* at *2.  After Carlos died from work-related injuries, his wife Yvonne Lara sued Saw Pipes under a negligence theory.  Yvonne sued as the

representative of Carlos's estate, bringing a survival action, but also as next friend of her two children, bringing a wrongful death action. *Id.*; *see* Tex. Civ. Prac. & Rem. Code Ann. §§ 71.004 (wrongful death), .021 (survival) (Vernon 2007 supp.); *see also Kramer v. Lewisville Mem'l Hosp.*, 858 S.W.2d 397, 403 (Tex. 1993) (citations omitted) (discussing distinctions between wrongful death and survivorship actions).   Saw Pipes moved to compel arbitration.   The trial court denied the motion, and Saw Pipes sought a writ of mandamus. *Jindal Saw*, 2008 WL 2186086, at *2.

The Court of Appeals held that the wrongful death claim was not covered by Carlos's arbitration agreement, but that the survival claim was. *Id.* at *8, *10.   First addressing the wrongful death claim, the court noted that wrongful death plaintiffs are sometimes said to "stand in the shoes" of the decedent regarding the merits of their claim, because their ability to recover against a given defendant is "derivative" of whether the decedent would have prevailed on a claim, had he survived. *Id.* at *6 (citing *Russell v. Ingersoll-Rand Co.*, 841 S.W.2d 343, 345 (Tex. 1992); *In re Kepka*, 178 S.W.3d 279, 295-96 (Tex. App.—Houston [1st Dist.] 2005, no pet.)).   For example, if a plaintiff contends that the defendant's negligence caused the decedent's death, the defendant may raise defenses to the merits of the decedent's claim, such as the statute of limitations, contributory negligence, or a release from liability. *Id.* (citing *Russell*, 841 S.W.2d at 347; *Winkler v. Kirkwood Atrium Office Park*, 816 S.W.2d 111, 115 (Tex. App.— Houston [14th Dist.] 1991, writ denied)).   Nevertheless, a decedent's arbitration agreement does not bind parties to a wrongful death suit, because the action never belonged to the decedent, but only arose as a result of the injured party's death. *Id.*   The suit compensates certain survivors for their loss; it "is for the exclusive benefit of the

surviving spouse, children, and parents of the deceased."  § 71.004(a).  In sum, despite asserting an action with "derivative" attributes, a wrongful death claimant is not contractually bound by the decedent's agreement to arbitrate claims arising from his injuries. *Jindal Saw*, 2008 WL 2186086, at *8; *see also Kepka*, 178 S.W.3d at 293-96.

While wrongful death claims are not controlled by a decedent's arbitration agreements, survival claims are different.  The claim is for injuries to the decedent.  By operation of law, the decedent's claim survives "in favor of the heirs, legal representatives, and estate of the injured person."  § 71.021(b).  The action is "wholly derivative" of the rights of the decedent; therefore, "*any defense* that would have been available against the decedent is available against the plaintiffs in a survival action." *Jindal Saw*, 2008 WL 2186086, at *9 (emphasis added) (citing *Russell*, 841 S.W.2d at 345).  Consequently, a decedent's agreement to arbitrate claims for personal injuries binds those who sue in the capacity of heir, legal representative, or administrator. *Id.* Applying this distinction from the wrongful death claim, the *Jindal Saw* panel held that the survival claim for Carlos's injuries brought by Yvonne as estate representative had to be arbitrated even though Yvonne never signed the arbitration agreement. *Id.* at *10.

Other state and federal courts in Texas have applied this distinction between wrongful death and survival claims.  In *Kepka*, the decedent's wife had signed an arbitration agreement on her now-deceased husband's behalf, but solely in her representative capacity.  178 S.W.3d at 293.  The appeals court found that this agreement did not bind the wife when she sued in her individual capacity, as the wrongful death claim was personal to her. *Id.* at 294.  The court distinguished this scenario from one in which a claimant seeks to "assert claims as the estate's representative on the estate's

behalf," in which case she would be bound by the arbitration agreement. *Id.* at 296. Recently, a district court in the Eastern District of Texas applied the *Kepka* analysis and denied a motion to compel arbitration, as the plaintiffs only sought wrongful death benefits on their own behalf. *Patterson v. Nexion Health, Inc.*, Civ. No. 2-06-cv-443, 2007 WL 2021326, at *3 (E.D. Tex. July 9, 2007). The court specifically noted that the plaintiffs were not bound by the arbitration clause because they did not seek survival benefits on behalf of the decedent's estate. *Id.*; *see also Washburn v. Beverly Enters.-Ga., Inc.*, No. CV 106 051, 2006 WL 3404804, at *6 (S.D. Ga. Nov. 14, 2006) (same).

### b.    Application to Wrongful Death and Survival Claims

In this case, Mr. Shanks signed a Plan which purports, in the event of his death, to oblige his "spouse, children, beneficiaries, representatives, executors, administrators, guardians, heirs or assigns" to arbitrate their claims. Because it explicitly covers claims brought by a "spouse" or "children," the Plan has a broader sweep than the arbitration agreement in *Jindal Saw*, which covered only Carlos Lara's "heirs, beneficiaries, and assigns." *See* 2008 WL 2186086, at *2. Nevertheless, Plaintiffs never signed the Plan, and were not in contractual privity with Swift. Under basic contract principles, Mr. Shanks could not sign away others' rights. *See id.* at *9 ("Carlos had the power to bind his heirs in the survival action . . . but could not bind the personal wrongful-death claims."); *Kellogg*, 166 S.W.3d at 738. Like the wrongful death claim in *Jindal Saw*, Plaintiffs' wrongful death claim arises by law for their sole benefit as surviving children and parents, not as heirs. *Compare* § 71.004(a), *with* § 71.021(b). Unless some other extracontractual justification compels arbitration under the Plan, *see infra*, the wrongful death claim is not affected by the Plan's arbitration provisions.

Like the plaintiff in *Jindal Saw*, however, Lee also brings a survival claim.  While she is a non-signatory to the Plan, Lee's rights as administratrix of the Shanks estate are "wholly derivative" of Mr. Shanks's rights at the time of his death.  *See Jindal Saw*, 2008 WL 2186086, at *9 (citing *Russell*, 841 S.W.2d at 345).  Plaintiffs acknowledge that Mr. Shanks was a signatory to the Plan.  [Dkt. No. 37 ¶ 3].  Section 2.3 of the Plan mandates that all claims for personal injury to Mr. Shanks be arbitrated.  Therefore, like the survival claim in *Jindal Saw*, Lee's survival claim falls under the arbitration provision. The inclusion of a survival claim also distinguishes this case from *Kepka*, *Patterson*, and *Washburn*, because the plaintiffs in these cases did not bring a survival claim jointly with their wrongful death claim.

### c.      Application to Death Benefits Under the Plan

This case involves not only wrongful death and survival claims, but also in play are death benefits which arise under Section 3.2 of the Plan.  As evidence of Plaintiffs' efforts to invoke the Plan, Swift puts forth various letters.  In two letters sent shortly before this lawsuit was filed, the children's attorney communicated to Swift the children's desire to claim the death benefits conferred by Section 3.2 of the Plan.  [Dkt. No. 39 ¶¶ 6-7; *id.* App'x B & C].  Swift also points to a letter sent several months after suit was filed, in which the children's attorney indicated a desire to obtain death benefits without being subjected to the Plan's arbitration requirement.  [Dkt. No. 39 ¶¶ 8-12; *id.* App'x D].  Moreover, the Magistrate ordered Plaintiffs and Intervenors to indicate whether they still sought benefits under the Plan.  [Dkt. No. 47].  Intervenors (i.e., Mr. Shanks's parents) represent that they do not seek benefits under the Plan at this time, but also state that they do not wish to waive their right to seek such benefits.  [Dkt. No. 49 ¶

11].  Plaintiffs (i.e., the children) represent that they have made a claim for death benefits under the Plan, yet wish to reserve the right to disclaim such benefits if the Court determines that such benefits fall under the Plan's arbitration clause.  [*Id.* ¶ 14].

Pursuant to the Texas Supreme Court's guidance in *Weekley*, the Court will scrutinize "the substance of the claim," and is not necessarily bound by Plaintiffs' pleadings.  *See* 180 S.W.3d at 131-32.  While the pleadings do not mention death benefits under Section 3.2 of the plan, Plaintiffs' conduct and admissions demonstrate an effort to obtain such benefits.  Unlike wrongful death benefits under § 71.004, the Plan's death benefits—including a potential payout of up to $150,000 to the beneficiaries—arise solely by virtue of the contract between Swift and Mr. Shanks.  In other words, liability "arises from the contract" and "must be determined by reference to it"; liability does not arise "from general obligations imposed by law."  *See Weekley*, 180 S.W.3d at 132.

The Court believes, however, that Plaintiffs' pre-litigation conduct cannot be characterized as extensive involvement in the contract.  In *Weekley*, Von Bargen oversaw many aspects of the performance of the contract long before litigation commenced.  Here, Plaintiffs did not seek any benefit from the Plan between Swift and Mr. Shanks until after Mr. Shanks's death.  Nevertheless, the nature of the contract in this case is different from that in *Weekley*.  The purpose of the contract in *Weekley* was to build and sell a home—a contract which waited for no conditions precedent before binding the parties to act.  The purpose of Section 3.2 of the Plan was to compensate Mr. Shanks's children in the event of his injury or death.  The children could not seek a benefit under the Plan until such contingency had occurred.  Given this difference, the fact that Plaintiffs sought no benefits until after Mr. Shanks's accident does not render the doctrine of direct benefits

estoppel inoperative.  By actively seeking a "direct benefit" under the Plan, Plaintiffs have obligated themselves to accept the Plan's burden, namely arbitration.

The facts of this case contrast with *Jindal Saw*, in which Yvonne Lara brought a wrongful death claim under § 71.004, but sought no additional death benefits under the plan signed by Carlos Lara.  *Cf.* 2008 WL 2186086, at *1, *4 ("The parties agree . . . that the agreement did not provide for death benefits.").  Here, Plaintiffs seek recovery under the wrongful death statute as well as under Section 3.2 of the Plan.  Because the "substantial and direct" death benefits exist solely by virtue of the contract between Mr. Shanks and Swift, the doctrine of direct benefits estoppel prevents Plaintiffs from denying or evading the burdens of the contract.  *See Weekley*, 180 S.W.3d at 127, 134.

### d.    The Arbitration Agreement Covers Death Benefits

While Plaintiffs acknowledge that they seek the Plan's death benefits, they next argue that such benefits are not covered by the Plan's arbitration clause.  [Dkt. No. 49 ¶¶ 12-20].  Plaintiffs concede that Mr. Shanks signed the Plan, and do not contest the validity of the Plan or its arbitration clause.  [Dkt. No. 37 ¶ 3].  Because the validity of the arbitration clause is uncontested, the Court must resolve any doubts about its scope in favor of arbitration.  *See Kellogg*, 166 S.W.3d at 737.  Additionally, "the only defenses pertinent to the gateway question of whether parties are bound to the agreement's clause to arbitrate are those contractual defenses of unconscionability, duress, fraudulent inducement, and revocation."  *Jindal Saw*, 2008 WL 2186086, at *7 (citing *In re First Merit Bank, N.A.*, 52 S.W.3d 749, 756 (Tex. 2001)).

The Court holds that Plaintiffs' claims for death benefits under the Plan must be arbitrated.  Plaintiffs do not raise any contractual defenses, *cf. id.*, but rather, argue that

their claims are beyond the scope of the Plan's arbitration clause.  Plaintiffs point to the clause which excludes from arbitration "any legal or equitable claim under ERISA for benefits, fiduciary breach, or other problem or relief solely relating to benefits payable under this Plan."  However, Plaintiffs ignore the sentence directly following the ERISA exclusion.  It reads: "The determination of whether a claim is covered by this Section shall also be subject to arbitration under this Section."

What is more, after thoroughly reviewing the record, the Court concludes that Plaintiffs have not made "legal or equitable claims under ERISA."  Plaintiffs agree: they state only that they "could sue under ERISA."  [Dkt. No. 49 ¶ 18].  The Court finds that Plaintiffs' claim for death benefits under the Plan is for "physical . . . damage, harm or death which relates to an accident," and therefore is within the scope of the arbitration clause.  Even if this question were seriously in doubt, under the terms of the arbitration clause, it would be submitted to the arbitrator.  Finally, the Court is troubled by Plaintiffs' stated intent to disclaim the Plan's death benefits if the claims must be arbitrated.  [Dkt. No. 49 ¶ 14].  This looks suspiciously like an attempt by a nonsignatory to "both have his contract and defeat it too."  *See Weekley*, 180 S.W.3d at 135.  The claims must be arbitrated.

In sum, the Court holds that Plaintiffs are not obligated by direct benefits estoppel to arbitrate the wrongful death claim.  However, Lee must arbitrate the survival claim brought on behalf of Mr. Shanks's estate.  Plaintiffs must also arbitrate their claim for death benefits under Section 3.2 of the Plan.  In the next section, the Court holds that Plaintiffs' remaining wrongful death claim is factually intertwined with the other claims brought in this action, and therefore must be jointly submitted to arbitration.

2.        *"Factually Intertwined" Wrongful Death Claims*

The parties have not considered whether the arbitrability of the survival and death benefits claims mandates submitting the remainder of Plaintiffs' claims to arbitration. *See Weekley*, 180 S.W.3d at 132 & n.25.[4]  The Court now holds that Plaintiffs' wrongful death claims are indeed "factually intertwined" with the survival and death benefits claims, and therefore must be arbitrated alongside the other claims.

As discussed above, if Plaintiffs had only pursued a wrongful death claim, it would not be subject to arbitration.  *See, e.g.*, *Kepka*, 178 S.W.3d at 294-96.  Such claim exists independently of any contract between Mr. Shanks and Swift.  Liability would arise not under the Plan's terms, but rather, "from general obligations imposed by law." *See Weekley*, 180 S.W.3d at 132.  This is because wrongful death claims sound in tort, not contract, and thus are not controlled by the Plan.  *See Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1075 (5th Cir. 2002).

However, even when a litigant asserts claims arising both in contract and in tort, an agreement to arbitrate contract disputes may require arbitration of tort claims as well. The Texas Supreme Court has held that "Texas law favors the joint resolution of multiple claims to prevent multiple determinations of the same matter."  *Jack B. Anglin Co., Inc. v. Tipps*, 842 S.W.2d 266, 271 (Tex. 1992) (citation omitted).  In *Tipps*, the City of Jacksboro contracted with Anglin to construct a dam.  *Id.* at 267.  The contract had a clause requiring that all questions "under the Contract" be arbitrated.  *Id.*  The City sued Anglin, alleging substandard work, and brought claims for breach of contract and

---

[4] Moreover, neither party has addressed whether death benefits under the Plan are cumulative to statutory wrongful death remedies, or whether Plaintiffs' claim for benefits under the Plan constitutes an election of remedies preventing them from seeking damages under Section 71.004 of the Code.  *See Weekley*, 180 S.W.3d at 132 & n.26.  However, because it will compel arbitration of all claims, the Court will not answer this question at this time.

negligence, as well as misrepresentation under the Consumer Protection–Deceptive Trade Practices Act (DTPA).  *Id.*  After finding that the arbitration clause covered the contract claim, the Supreme Court held that the DTPA claim had to be arbitrated as well:

> The City alleges that Anglin's goods and services were less than Anglin represented they would be.  Evidence to support these allegations will be required to establish the City's breach of contract claim.  Although the City's misrepresentation claims are grounded in a legal theory distinct from its contract claim, they are factually intertwined, and thus are subject to the arbitration provision of the contract.

*Id.* at 271.

The Supreme Court in *Weekley* reiterated the principle that "factually intertwined" contract and tort claims should normally be arbitrated together:

> Nonparties face a choice when they may plead in either contract or tort, but pleading the former invokes an arbitration clause broad enough to cover both (as most do).  If they pursue a claim "on the contract," then they must pursue all claims—tort and contract—in arbitration.

*Weekley*, 180 S.W.3d at 132 & n.25 (citing *Tipps*, 842 S.W.2d at 271).  A Texas Court of Appeals recently noted that claims would "come within the scope of the arbitration provision" if the allegations supporting the additional claims "touch upon the subject matter of the agreement containing the arbitration provision."  *In re Bath Junkie Franchise, Inc.*, 246 S.W.3d 356, 366 (Tex. App.—Beaumont 2008, orig. proceeding [no mand. h.]).  In that case, the court held that because "the same nucleus of facts" supported claims of breach of contract, fraud, and conspiracy, all claims would be arbitrated pursuant to an agreement contained in the parties' contract.  *Id.* at 366-67.

No cases appear to have discussed when a nonsignatory's claim for wrongful death is "factually intertwined" with a survival claim brought on the decedent's behalf, or

a claim for death benefits under an employment plan.[5]   However, the Court easily concludes that Plaintiffs' wrongful death claim meets the "factually intertwined" standard.  The proof to establish liability for wrongful death—in this case, negligence or gross negligence—will be identical to the proof necessary to establish liability for the survival claim.  Moreover, Plaintiffs' claim for death benefits under the Plan concerns "the same nucleus of facts" which would be at issue in a wrongful death claim: the circumstances surrounding the death of Mr. Shanks, and the recovery to which Plaintiffs would be entitled.  *See Bath Junkie*, 246 S.W.3d at 366-67; *Pack v. Crossroads*, 53 S.W.3d 492, 516 (Tex. App.—Fort Worth 2001, pet. denied) (holding that "the same allegations gave rise to both the wrongful death and survival actions").  The Court found in the preceding section that, in seeking death benefits under the Plan, Plaintiffs have brought suit "on the contract."  *See Weekley*, 180 S.W.3d at 132.  Therefore, judicial policy requires that the wrongful death claim be submitted to arbitration jointly with Plaintiffs' claim for death benefits and Lee's survival claim brought on behalf of the estate of Mr. Shanks.

### 3.    *Third-Party Beneficiary & Family Law*

Because the Court has concluded that all claims asserted by Plaintiffs and Intervenors must be submitted to arbitration, the Court will not consider Swift's alternate

---

[5] Strangely, the Court of Appeals in *Jindal Saw* did not directly address what would become of Yvonne Lara's wrongful death claim after the estate's survival claim proceeded to arbitration.  *See* 2008 WL 2186086, at *7-8, *10.  After applying the standard for whether to grant the extraordinary remedy of mandamus, the court merely held that the trial court did not abuse its discretion in declining to compel arbitration of the wrongful death claim.  *Id.* at *10.  The court thus never considered whether the claims were "factually intertwined."  The court did indicate, however, that the arbitrator should first decide the merits of the survival claim, whereupon the arbitrator's findings would be *res judicata* on the merits of the wrongful death claim.  *Id.* at *7 (citing *W. Dow Hamm III Corp. v. Millennium Income Fund, L.L.C.*, 237 S.W.3d 745, 755 (Tex. App.—Houston [14th Dist.] 2007, orig. proceeding)).  Because in this case the Court holds that all claims must be arbitrated and the case dismissed, the question of *res judicata* will not be implicated.

arguments that: (1) the children are third-party beneficiaries of the Plan, or (2) that Mr. Shanks had authority under Texas family law to bind his children to arbitrate their claims relating to his injury or death.[6]

**D.      Stay or Dismiss?**

Section 3 of the FAA requires that, upon a party's motion, a court shall stay an action brought "upon any issue referable to arbitration."  9 U.S.C. § 3.  Section 3 says nothing about dismissal, but "[t]he weight of authority clearly supports dismissal of the case when *all* of the issues raised in the district court must be submitted to arbitration." *Alford v. Dean Witter Reynolds, Inc.*, 975 F.3d 1161, 1164 (5th Cir. 1992) (emphasis in original) (citations omitted).   In such a case, a court may dismiss the action with prejudice, as "retaining jurisdiction and staying the action will serve no purpose." *Id.*  All claims brought by Plaintiffs and Intervenors in this case are subject to arbitration.  Swift has asked the court to dismiss the case.  [Dkt. No. 35].  The Court will oblige, and dismiss the action with prejudice. *See Reynolds v. Halliburton Co.*, 217 F. Supp. 2d 756, 758 (E.D. Tex. 2002) (dismissing with prejudice); *cf. Jureczki v. Banc One Tex., N.A.*, 252 F. Supp. 2d 368, 379-80 (S.D. Tex. 2003) (holding that unless the party seeking arbitration requests dismissal, dismissal should be without prejudice).

---

[6] Swift has moved for leave to file a sur-sur-reply and moved to strike portions of Plaintiffs' sur-reply. [Dkt. Nos. 52-53].  Because neither the sur-sur-reply nor the objected-to evidence impacts the disposition of the motion to compel arbitration, Swift's motions are denied as moot. *See Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, No. 3:04-cv-1866-D, 2006 WL 984690, at *1 n.6 (N.D. Tex. Apr. 14, 2006).

III.    **ORDER**

For the foregoing reasons, the Court hereby **GRANTS** Defendant's Motion to Compel Arbitration.  [Dkt. No. 35].  All claims asserted in the above-styled action shall be submitted to arbitration in conformity with the Plan.  All remaining motions are **DENIED as moot**.  [Dkt. Nos. 52, 53, 64, 69, 71, 74-76].  This action is hereby **DISMISSED with prejudice**.  A separate Final Judgment will issue.

IT IS SO ORDERED.